IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILDA SUCELY R.M.D.E., | Civil No. 1:26-cv-03903-MWJS |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | A# 095-609-838 |
| CHRISTOPHER CHESTNUT, WARDEN, CALIFORNIA CITY CORRECTIONAL FACILITY, *et al.*, | |
| Respondents. | |

## INTRODUCTION

Petitioner Hilda Sucely R.M.D.E.[1] is an immigration detainee proceeding with a

petition for a writ of habeas corpus under 28 U.S.C. § 2241, Dkt. No. 1, and an

application for temporary restraining order, Dkt. No. 2.  For reasons that follow, the

petition is GRANTED and the application is DENIED as moot.

## BACKGROUND

Petitioner is the mother of two U.S. citizen children and has lived in this country

for nearly a quarter of a century.  When she entered the United States without

inspection as a 19-year-old in March 2003, she was arrested by immigration authorities

---

[1]     For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Corr. Ctr.*,
No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only
Petitioner's first name and the initials of her last name are used in this order.

and then released on bond.  Dkt. No. 1, at pg. 2.  In the two decades plus since her release, she has made a full life here—one blessed with joys but also marked by pain.  A child born in 2014 passed away from a rare genetic disorder.  *Id.* at pg. 9.  And the youngest of the two living children, an eight-year-old, suffers from that same disorder. *Id.*  It is serious condition:  it results in "cardiac, skeletal muscle, and respiratory symptoms," requires the child to "live near a major medical center," and necessitates life-long specialized medical care from a cardiologist, pulmonologist, and gastroenterologist.  *Id.*  Petitioner, the eight-year-old's primary caregiver, provides the child with significant assistance, including insuring that he receives all his needed treatments and attends all needed follow-up appointments.  *Id.*

   Although her children are U.S. citizens, Petitioner is a noncitizen without lawful status in the United States.  But she may be eligible for cancellation of removal in light of the length of her residency in the United States and the extreme hardship that her removal would cause her eight-year-old son.  *Id.* at pg. 10.

   Nothing about Petitioner's story suggests that she has ever been a danger to the community or a flight risk.  Respondents do not suggest otherwise.  But when Petitioner appeared for a fingerprinting appointment on April 9, 2026, in connection with her efforts to obtain immigration relief under the Violence Against Women Act—and without any prior notice or process—she was arrested by immigration authorities.  *Id.* at pgs. 9–10.  She has been in immigration detention for the nearly two months since.

Why?  Because back in September 2003, an order of removal was entered in Petitioner's absence—that is, *in absentia*.  There is no dispute that Petitioner never received any notice of the hearing that resulted in the removal order.  Nor is there any dispute that Petitioner received no notice of the order until after she was arrested by immigration authorities in April of this year.  Petitioner is now actively seeking relief from the order, but those administrative proceedings are ongoing.  *Id.* at pg.10–11. And, in the meantime, the government has taken the position that because of the *in absentia* order from 2003, Petitioner's immigration detention is authorized by statute— even though no one suggests she is a danger or a flight risk.

While in immigration detention, Petitioner wrote to immigration authorities and asked them to consider releasing her on an order of supervision, given that she has no criminal history or any other history that would render her a danger to the community, that she is not a flight risk in light of her family ties, and that her eight-year-old's medical needs create a compelling reason to allow her to remain on release while her immigration proceedings move forward.  *Id.* at pg. 11.  To date, Petitioner has received no response to her request.  *Id.*

So on May 20, 2026, Petitioner filed her petition for a writ of habeas corpus, along with her application for a temporary restraining order.

## DISCUSSION

Petitioner's principal argument is that the court should order her immediate release from immigration detention because her detention violates the government's own regulation, 8 C.F.R. § 241.4(d)-(f). She acknowledges that under 8 U.S.C. § 1231, a noncitizen "shall" be detained during a defined "removal period" of 90 days. Dkt. No. 1, at pg. 12. But she argues that the 90-day period started, in this case, when the *in absentia* order was entered in 2003. *Id.* She further argues that while the 90-day period can be tolled or suspended under certain circumstances—when, for instance, a noncitizen conspires or acts to prevent the execution of the removal order—there are no such circumstances here. *Id.* And she argues that while the 90-day period can be extended after its expiration, government regulations require ICE to provide pre-deprivation notice and process before it does so. *Id.* (citing 8 C.F.R. § 241.4 *et seq.*). Moreover, that extension is only permissible, under the regulations, "if the individual poses a risk to the community or is unlikely to comply with the order of removal." *Id.*

Because Petitioner was provided no pre-deprivation process before her detention, and because the government does not even suggest it could prove she is a danger or flight risk, Count One of the petition seeks Petitioner's immediate release based on a "violation of 8 U.S.C. § 1231 and 8 C.F.R. § 2[41].4." *Id.* at pgs. 20–21. In other counts, Petitioner contends, among other things, that her procedural and substantive constitutional due process rights have been violated. *Id.* at pgs. 21–23.

4

After reviewing the petition, the court issued an Order to Show Cause calling on Respondents to distinguish this case from others in which individuals previously released were detained without any pre-deprivation process. Dkt. No. 4. The court also specifically wrote: "To the extent Respondents choose to argue that this case is distinguishable because Petitioner apparently was ordered removed in absentia over 22 years ago, in September 2003, they should address why the 90-day removal period under 8 U.S.C. § 1231 would not have expired by this point." *Id*. The court cited *M.L.G.G. v. Wamsley*, Civ. No. 6:25-cv-02012, 2025 WL 3539183 (D. Or. Dec. 10, 2025), in which that court held "[t]he removal period runs from the time the removal order becomes administratively final and not from the time the noncitizen is taken into custody," *id.* at *3.

In their response to the Order to Show Cause, Respondents do not dispute that the 90-day removal period began back in September 2003. They do not dispute that there are no circumstances that would support a tolling or suspension of that 90-day period. They do not dispute that under 8 C.F.R. § 241.4, a noncitizen is entitled to pre-deprivation notice and process before an expired 90-day removal period is extended. And they do not dispute that, under that regulation, an extension is permissible only if, following proper pre-deprivation process, it is determined that the noncitizen is a danger to the community or a flight risk. Nor do Respondents argue that Petitioner has ever been—or currently is—a danger to the community or a flight risk.

5

But Respondents argue that the petition should be denied anyway.  Their contention is that under 8 U.S.C. § 1231, an extension of the 90-day removal period is authorized *either* if a noncitizen has been found to be a danger or flight risk *or* if the noncitizen is "inadmissible under section 1182."  Dkt. No. 8, at pg. 3 (quoting 8 U.S.C. § 1231(a)(6)).  Although Respondents do not suggest Petitioner has ever been found a danger or flight risk, they argue she is "inadmissible under section 1182."  *Id.*  That, in Respondents' view, is a sufficient basis to extend the 90-day removal period, at least for up to six months.  *Id.*

This argument might be correct, as far as the statute goes, but it does not answer Petitioner's argument that the government has chosen to adopt more rigorous procedures by way of regulation.  Put differently, even if 8 U.S.C. § 1231 itself (the statute, found in the United States Code) would allow for an extension of the 90-day removal period without any finding of danger or flight risk in the case of any person "inadmissible under section 1182," Petitioner's argument is that 8 C.F.R. § 241.4 (the regulation, in the Code of Federal Regulations) *does* require those findings.  And Respondents have not answered that latter contention.

Petitioner not only amply developed this regulatory argument in her petition (thus affording Respondents notice of the argument and a full opportunity to address it), but she also cited district court decisions that found the argument persuasive.  *See, e.g.,* Dkt. No. 1, at pg. 14 (quoting *Castillo Gomez v. Albarran*, No. 26-cv-01790, 2026 WL

1229590 (N.D. Cal. May 5, 2026), for the proposition that "pursuant to the regulations, 'before detaining a noncitizen beyond the removal period, notice and an opportunity to submit information must be given to the noncitizen'"). Despite that ample notice—notice that, it bears mentioning, Petitioner did not receive either for her removal proceedings in 2003 or her immigration detention more recently—Respondents declined to make any argument challenging either the merit of Petitioner's regulatory argument, or the persuasiveness of the precedents she cited. Respondents likewise declined to challenge Petitioner's contention that the asserted regulatory violation is a proper basis for ordering her immediate release. This amounts to forfeiture. *See Pablo Sequen v. Albarran*, 814 F. Supp.3d 1005, 1024 n.39 (N.D. Cal. 2025) (collecting authorities for the principle that arguments not raised in briefing are forfeited).

Accordingly, the court need not now definitively resolve whether Petitioner's regulatory argument is correct. It suffices to say that, at least in this case, Respondents do not dispute that it is.

<u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED as to Count One. Because it is unnecessary to resolve the petition's remaining counts, the court declines to do so.

Respondents are ORDERED to immediately release Petitioner Hilda Sucely R.M.D.E. (A# 095-609-838) from their custody. Respondents shall not impose any

additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing.  Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent pre-deprivation compliance with the regulatory protections set forth in 8 C.F.R. § 241.4.  This order does not address the circumstances in which exigent or urgent circumstances arise that justify arresting and detaining Petitioner before pre-deprivation process can be provided.

Given the grant of the petition, the Petitioner's application for a temporary restraining order, *see* Dkt. No. 2, is DENIED AS MOOT.  The Clerk of Court is DIRECTED to close this case and enter judgment for Petitioner.

IT IS SO ORDERED.

DATED:  May 28, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 1:26-03903-MWJS; *Hilda Sucely R.M.D.E. v. Chestnut,* et al.; ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS